**Richard M. JONES, et al., Plaintiffs,**

v.

**The TRANSOHIO SAVINGS ASSOCIATION, Defendant.**

No. C82–3130.

United States District Court,
N.D. Ohio, E.D.

July 1, 1983.

Harvey B. Bruner, Steven M. Weiss, Bruner & Shafran, Cleveland, Ohio, for plaintiffs.

Brett J. Bacon, David Naftzinger, Thompson, Hine & Flory, Cleveland, Ohio, for defendant.

MEMORANDUM OF OPINION
AND ORDER

KRENZLER, District Judge.

This action was filed by the plaintiffs on November 12, 1982. The plaintiffs alleged that the defendant's assignor violated the Truth-in-Lending Act (hereinafter TILA), 15 U.S.C. § 1601 *et seq.* and Federal Reserve Regulation Z, 12 C.F.R. § 226.1 et seq., by failing to disclose the variable-rate

feature of their mortgage. The plaintiffs brought their suit on behalf of themselves and a class of consumers who had dealt with the defendant's assignor and were similarly situated.

The complaint further alleged that subject matter jurisdiction is based upon § 1640(e) of the Truth-in-Lending Act (TILA) and 28 U.S.C. § 1337, providing jurisdiction for any action arising under an Act of Congress regulating commerce.

In substance, the complaint alleges the following.

On June 15, 1971, the plaintiffs Richard M. Jones and Donna S. Jones entered into a loan agreement with the defendant's assignor, the Union Savings Association, for the purpose of financing the purchase of their home. At that time the plaintiffs executed a mortgage note. On the same date, a disclosure form, purporting to satisfy the requirements of Regulation Z, was drawn up by the defendant's assignor and given to the plaintiffs. The plaintiffs allegedly did not receive a copy of the mortgage note, and apparently did not request one.

Subsequent to this transaction, the note was assigned by Union Savings Association to The Transohio Savings Association, the defendant in this case.

Paragraph 10 of the mortgage note provides that the holder may, after two (2) years from the time of execution, increase the interest rate as much as one percent per annum. This option required that the holder merely give the customer 30 days' advance notice. Although the Disclosure Document states the interest rate as seven percent, it fails to mention the variable rate provision as found in paragraph 10 of the mortgage note. Plaintiffs allege that on or about October 29, 1982, the defendant notified them that it planned to exercise its option to raise the interest from seven (7) to eight (8) percent. Plaintiffs further alleged that this was the first time they were made aware of the variable clause in the loan agreement.

On December 9, 1982, the defendant timely filed a motion to dismiss on the grounds that this Court lacks subject matter jurisdiction. Defendant alleges that the one-year statute of limitations to bring this action elapsed on June 14, 1972, one year after the loan transaction was consummated.[1] In support of its argument, defendant cites the leading Sixth Circuit case of *Wachtel v. West,* 476 F.2d 1062 (6th Cir.), *cert. denied,* 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973), which held that the statute of limitations provided by § 1640(e) begins to run at the time the contract for extension of credit is entered into.

Plaintiffs argue that, in the instant situation, the statute is tolled because the defendant concealed the existence of the variable rate feature from them by failing to provide them with a copy of the note or an accurate and complete disclosure statement. Plaintiffs further argue that because of the concealment of the very information the Act mandates the lender to supply, they were not apprised of the TILA violation until the defendant first exercised its option to increase the interest rate. Therefore, plaintiffs contend, the remedial purpose of the Act is defeated unless the statute is tolled until the time the consumer knew, or should have known, of the existence of the nondisclosed information.

This case presents the issue of whether the lender's failure to include pertinent information in the TILA disclosure statement tolls the statute of limitations, 15 U.S.C. § 1640(e), until the borrower discovers the existence of the omitted information.

Section 1640(e) of the TILA reads as follows:

> Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, *within one year from the date of the occurrence of the violation.* (emphasis added).

The purpose of the Truth-in-Lending Act as stated within the Congressional Findings, 15 U.S.C. § 1601, is:

---

1. The loan transaction was consummated on June 15, 1971.

to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and to avoid the uninformed use of credit . . . .

Hence, the detailed requirements of Regulation Z, and the command that the lender "shall furnish the customer with a duplicate of the instrument or a statement by which required disclosures are made . . ." 12 C.F.R. § 226.8(a).

In *Wachtel v. West, supra,* the Sixth Circuit held that the statute of limitations in § 1640(e) begins to run at the time the contract for extension of credit is entered into, and that the violation is not a continuous one. Determining that the purpose of the statute was to give the borrower an opportunity to do some comparative shopping for credit terms, the court reasoned that this purpose would only be meaningful if the buyer had the necessary information before purchasing the credit. The court concluded that since disclosure was required at the time the contract was consummated, such was the point from which the limitations period runs.

The dissent in *Wachtel* pointed out the fundamental flaw in this reasoning. By holding that the statute runs from the date the transaction was consummated, the effectiveness of the statute is limited to situations in which a borrower inadvertently discovers the violation within a year after the transaction. This enables creditors to structure loan transactions in such a way that the violation is not discovered until after the statute has expired.[2]

Since the Sixth Circuit has held that the one-year statute of limitations begins to run when the transaction closes, thereby implicitly rejecting the tolling theory, it places a considerable burden on the borrower. Congress' intent in requiring the lender to give the borrower either a duplicate copy of the note or a complete statement setting forth all relevant terms and conditions prior to closing, was to give the borrower the opportunity to make an intelligent choice between this particular loan or one with another lending institution.

The Sixth Circuit's *Wachtel* holding places a burden upon the borrower because it imputes to the borrower the knowledge that, at or before the time of closing, he should have been given a copy of the promissory note or a complete and accurate disclosure statement. It further imputes to the borrower the knowledge that the lender's failure to provide him these disclosure documents results in a violation of the law, and that the borrower must bring his action within a year therefrom.

Naturally, if the lender gives the borrower a duplicate copy of the note or a complete and accurate statement as required by Regulation Z, there is no violation of the law, and no cause of action accrues.

However, if the lender does not give a duplicate copy of the note or a complete and accurate statement to the borrower,

**2.** In support of their argument, the plaintiffs cite two cases which remedy the problem recognized in the *Wachtel* dissent.

In *Goldman v. First National Bank,* 532 F.2d 10 (7th Cir.1976), the plaintiff alleged that the finance charges on the defendant's credit cards were computed differently in the bill than had been stated in the disclosure statement. Since the plaintiff paid his bill in full for the first year, and no finance charge accrued until after that time, he did not discover the discrepancy until more than a year after the transaction was consummated. Reversing the district court's judgment that the action was time-barred, the court of appeals held that the statute of limitations ran from the time the finance charge was first discovered.

Similarly, in *Mori v. Crocker National Bank,* case No. 6–76–90 AJZ (N.D.Cal.1976), the con-

sumers did not become aware of the TILA violation until four years after the loan transaction. Believing that a more flexible approach should be used in these cases, the court held that the statute of limitations is tolled until the time that the borrower discovered, or should have discovered, the lender's non-disclosure. The court reasoned that to hold otherwise would promote evasion by lenders of the Act's requirements, and would force buyers to "divine the existence of any and all terms the lender failed to disclose." *Id.,* at 4.

While these cases seem to best effectuate the remedial purposes of the TILA, they are in direct conflict with the Sixth Circuit's holding in *Wachtel,* and therefore have no bearing on the outcome of the instant case.

there is a violation. Further, if the lender does not give a duplicate copy of the note but gives a statement that is incomplete, inaccurate or misleading, there is also a violation. Whatever form the violation takes, *Wachtel* provides that the law is breached as of the time of closing and the suit must be brought one year from that time. Since knowledge that the lender must give him a complete and accurate disclosure statement or a copy of the promissory note is *imputed* to the borrower, the statute begins to run from closing regardless of whether the borrower has *actual knowledge* of the violation.

This burden not only serves to defeat the congressional intent of aiding the borrower in choosing a suitable lender, but also encourages the lender to evade the statute's requirements by giving the borrower either an inaccurate statement or none at all. Under the Sixth Circuit's interpretation of the statute, therefore, the lender's only risk is that the borrower may discover the lender's violation and act upon it within a year from the closing. If the borrower does not make the discovery within that time, the lender successfully escapes the consequences of his unlawful acts.

In the instant case, the plaintiffs were not given a copy of the promissory note. They were given a disclosure statement, but it was incomplete in that it omitted the variable interest provision. Variable interest provisions are material terms which must be included in the disclosure statement. Regulation Z, § 226.8(b)(8), 12 C.F.R. § 226.8(b)(8). Therefore, a violation occurred when the plaintiffs signed the note, thereby consummating the transaction. The one-year statute began to run from that point.

By the terms of the note in the instant case, the variable clause could not be triggered until at least two years after the transaction was closed. Moreover, the only action on the defendant's part which would apprise the plaintiffs of the existence of the variable provision was the invocation of that clause. Therefore, by the note's terms, the defendant would never apprise the plaintiffs of the defendant's violation before the expiration of the one-year limitations period.

In fact, the only way the plaintiffs could have timely discovered the existence of the variable-rate clause would have been by the plaintiffs' taking affirmative steps to determine the accuracy and completeness of the statement they were given.

As a practical matter, this means that borrowers who are confronted with the plaintiffs' dilemma must do one of two things. They must either request a duplicate copy of the note from the lender and compare it with the disclosure statement or ask the lender if the statement he has given them is complete and accurate. From these inquiries, the borrowers must then determine whether the statement the lender initially gave them was complete and accurate, and whether they have a cause of action. Borrowers must make these inquiries and determinations before the one-year statute expires.

This Court believes that the Sixth Circuit's interpretation of this statute of limitations runs contrary to Congress' overall purpose in enacting the TILA. Moreover, if the instant case were one of first impression in this circuit, this Court would be inclined to hold that the statute runs, not from the time of closure, but from the time that the borrower discovered the existence of the nondisclosed information. To impute knowledge of the law to the borrower and to impose a duty upon him to discover information that the lender, in violation of the statute, withheld from him, makes short work of a statute intended for the borrower's benefit. Nevertheless, Sixth Circuit precedent, which this Court must follow, dictates that the one-year statute of limitations runs from the time of the loan transaction's consummation, and not from the time the borrower discovered the violation. *Wachtel v. West, supra.*

Accordingly, the defendant's motion to dismiss for lack of subject matter jurisdiction is granted and plaintiffs' complaint is hereby dismissed.

IT IS SO ORDERED.